No. 12,878.

SLUSSER v. FIRST NATIONAL BANK OF DENVER.
(25 P. [2d] 183)

Decided September 11, 1933.

Mr. E. M. SABIN, Mr. JAMES N. SABIN, for plaintiff in error.

Messrs. HUGHES & DORSEY, Mr. MONTGOMERY DORSEY, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PARTIES appear in same order as in the court below.

Plaintiff filed second amended complaint to which defendant filed a general demurrer which was sustained and plaintiff elected to stand on said amended complaint, and trial court entered order dismissing plaintiff's amended complaint, to which ruling and order plaintiff assigns error.

For ease in discussion and determination of the correctness of the court's ruling, the second amended complaint is fully set out and follows:

"1. That the defendant, First National Bank, is now and was at all times herein mentioned, a corporation, organized under the banking laws of the United States of America, with its principal office in the City and County of Denver, State of Colorado.

"2. That at all times herein mentioned Robert D. Webb was the owner of one hundred thousand (100,000) shares of stock in the Empire Chief Mining Company, a corporation.

"3. That in November, 1929, plaintiff opened negotiations with one Robert D. Webb, for the purchase of one hundred thousand (100,000) shares of the capital stock of the Empire Chief Mining Company, the purchase price to be Five Cents ($.05) per share net to said Webb, and for the placing in escrow of said stock for delivery to the plaintiff as paid for.

"4. That said Robert D. Webb, on November 8th, 1929, wrote to the plaintiff the following letter:

" 'Minden, La., Nov. 8th, 1929.

" 'Mr. C. R. Slusser,

" 'Patterson Building,

" 'Denver, Colo.

" 'Dear Sir:

" 'Yours 5th, and am glad to note that the stock market is improving and settling down there, and I see that 5000 shares of the Empire Chief sold on the 5th at 5½. We are going to place with you 100,000 of this stock on the basis of 5 cents net to us, you taking care of all charges. I believe this is about in line with what you wanted in your letter on this subject.

" 'My certificates are all large being $100,000.00 each, and will be glad if you will write me how you would want to handle same, and through what bank. I suppose it will be necessary to get the big certificate cut up into smaller ones, as per your letter; please give me the detail of this fully, so I will know just how to handle it.

" 'In this connection, I am wondering if you could not sell one or two of the big certificates to private individuals who want to make the investment; this really looks like a very fine investment, and the stock is going up right along. My only reason for selling now is to raise some money that we can use to good advantage, but we are going to keep a big lot of the stock in the company.

" 'Yours very truly,

" '(Signed) Robt. D. Webb.'

"5. That on November 11th, 1929, said plaintiff wrote the following letter to the said Robert D. Webb:

" 'November 11, 1929.

" 'Mr. Robt. D. Webb,

" 'Minden, Louisiana.

" 'Dear Sir:—

" 'Yours 8th. If you will send your Empire Chief Certificate to the First National Bank, Denver, with instructions to deliver to me or my order any part of same

when and as sold, I will take it up and pay the charges for transfer, etc., so that it will net you 5c per share.

" 'I will handle this so that it will not hurt the market and the other brokers will not know the source of my selling orders, and I will get busy on it so that you will have your returns as promptly as possible.

" 'If there is an opportunity to handle a large block to a single buyer, I will submit the proposals to you by wire for your consideration. This refers to additional commitments.

" 'With best wishes,
" '(Signed) C. R. Slusser.'

"6. That in response to said letter of November 11th, 1929, Robert D. Webb did, on the 13th day of November, 1929, mail to the First National Bank, defendant herein, Certificate No. 7711, for one hundred thousand (100,000) shares of the capital stock of the Empire Chief Mining Company, the letter of transmittal being as follows:

" 'Minden, Louisiana, November 13, 1929.

" 'First National Bank,

" 'Denver, Colorado.

" 'Gentlemen:

" 'At the request of Mr. C. R. Slusser I am inclosing you herewith Certificate 7711 for 100,000 shares of the capital stock of the Empire Chief Mining Company, said certificate being issued to me on February 12, 1929. I have indorsed the certificate in blank today in the presence of N. R. Grigsby. Please deliver any part of this certificate to Mr. C. R. Slusser, Patterson Building, Denver, or his order, as the same is sold and you receive for partial sale net five cents (5c) per share to my credit.

" 'Thanking you, I am,

" 'Yours very truly,
" '(Signed) Robert D. Webb.'

"7. That thereafter, on towit, November 16th, 1929, defendant bank wrote the following letter to Mr. C. R. Slusser:

" 'November Sixteenth, 1929.

" 'Mr. C. R. Slusser,

" 'Patterson Building,

" 'Denver, Colorado.

" 'Dear Sir:

" 'We have today received from Robert D. Webb, certificate for 100,000 shares of the capital stock of the Empire Chief Mining Company, which is to be delivered to you upon payment of five cents per share.

" 'We note that you have the privilege of taking up any part of the same at your discretion and we would suggest having this certificate split up so that the desired number of pieces may be on hand for your anticipated purchases. If you will advise the name of the Transfer Agent, we will have this done for you.

" 'We might further add that the certificate is made out in the name of Robert D. Webb and the endorsement is made Robt. D. Webb.

" 'Awaiting your further instructions, we are

" 'Yours very truly,

" '(Signed) J. F. Dawson,

" 'Assistant Cashier.'

"8. That said defendant bank has been paid its charges of five dollars ($5.00), and took and received said stock and kept and retained the same until on or about the 18th day of February, 1930.

"9. That on or about the 18th day of February, 1930, plaintiff caused to be tendered to said defendant bank for the purchase of ten thousand (10,000) shares of said stock the sum of Five Hundred Dollars ($500.00) and the further sum of Twenty-three Dollars ($23.00) to cover transfer charges, accompanied by request to deliver said ten thousand (10,000) shares of stock to B. E. Simpson.

"10. That thereafter and on the same date, towit, February 18th, 1930, said defendant bank returned said mentioned one hundred thousand (100,000) shares of

stock to the said Webb without notice to or authority from the said plaintiff and without any request being made for the return of said stock by the said Webb and contrary to the terms and conditions under which said bank held said stock and in violation of the terms and conditions under which the bank held the same.

"11. That thereafter the bank returned to said B. E. Simpson the said Five Hundred and Twenty-three Dollars ($523.00) that had been tendered for the purchase and transfer of the ten thousand (10,000) shares of stock.

"12. That the market value of said one hundred thousand (100,000) shares of stock was at that time Seven and One-half Cents ($.075) per share.

"13. That at the time the bank returned said stock plaintiff was ready and able to purchase the same at Five Cents ($.05) per share.

"14. That the said bank, in returning the said one hundred thousand (100,000) shares of stock, placed itself in a position where it could not deliver said stock to the plaintiff and because of the violation by the said defendant of the terms and conditions under which it held said stock and received the same, plaintiff suffered damages in the sum of Two Thousand Five Hundred Dollars ($2,500.00) ; and that ever since the return of said stock it has been impossible for the said plaintiff to purchase said stock on the market at the price of Five Cents ($.05) per share, or for any price less than Seven and One-half Cents ($0.75) per share.

"Wherefore, plaintiff prays judgment against said defendant in the sum of Two Thousand Five Hundred Dollars ($2,500.00), together with interest thereon at the rate of Eight Per Cent (8%) per annum from the 18th day of February, 1930, and for costs of suit."

Defendant attacks above pleading by contending that the pleading shows on its face: (1) That no escrow was ever established at the defendant bank; (2) that even if an escrow had been established it was subject to

a condition which is not alleged to have been performed; (3) that even if there had been an escrow without conditions, plaintiff received back the money tendered without protest, thereby ratifying the action of the defendant; (4) that, even if the escrow had been established without conditions, and even if there had been no ratification of defendant's acts, the second amended complaint states no cause of action, except as to 10,000 shares. According to the well settled rule, all facts well pleaded are admitted, and we consider only the legal sufficiency of the pleading.

■■ Whether the composition of facts as pleaded constitute a true escrow or not, is not the entire question. Does it state facts, even if poorly pleaded, that are sufficient to allow it to stand as stating a cause of action?

Call the pleaded transactions whatever you may, they disclose an acceptance by Webb of terms sought by plaintiff. On that acceptance plaintiff requested Webb to send stock to defendant bank, with directions, which was accordingly done. The defendant bank accepted the position designated for it, was paid therefor, and notified plaintiff it was ready to act in its position as per instructions and it remained in that position between the parties until plaintiff attempted to perform part of the condition, it was then too late for defendant to deprive plaintiff of part performance. Under the conditions as pleaded, defendant argues that an unreasonable time elapsed before plaintiff acted. As between plaintiff and Webb the time had not been deemed unreasonable, because Webb left the offer open all that time and had not elected to recall his proposition and it was not for the bank to say anything concerning the terms or the time. Defendant likely could have returned the stock to Webb prior to plaintiff's tender of performance without liability on the ground that more than reasonable time had elapsed, and so far as the pleading is concerned, had had no indication from plaintiff as to whether he con-

templated acting in accordance with the negotiations as made by the correspondence of all parties. But if the bank stood by until plaintiff made tender and actually paid in money as alleged, before it returned stock, it faced liability which attached when plaintiff attempted performance.

This being true plaintiff stated a cause of action on account of defendant's failure and refusal to deliver 10,000 shares, and said second amended complaint was good as against general demurrer and should not have been dismissed.

If enough can be culled from the amended complaint to show that plaintiff was entitled to relief, a general demurrer must be overruled. *Gregg v. Hayes,* 27 Colo. App. 412, 149 Pac. 1055.

The trial ocurt committed error in sustaining defendant's demurrer and judgment is reversed with instructions to reinstate complaint and allow parties to proceed in accordance with the views herein expressed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BUTLER concur.